Carolyn HOLLAND, Plaintiff–Appellant,

v.

**JEFFERSON NATIONAL LIFE INSURANCE COMPANY,** Defendant–Appellee.

No. 88–2542.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1989.

Decided Aug. 28, 1989.

Rehearing and Rehearing En Banc Denied Sept. 27, 1989.

Raymond J. Hafsten, Jr., Indianapolis, Ind., for plaintiff-appellant.

Daniel C. Emerson, Bose, McKinney & Evans, Indianapolis, Ind., for defendant-appellee.

Before POSNER, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Carolyn Holland filed this Title VII action against her employer, Jefferson National Life Insurance Company (Jefferson), alleging that she had been subjected to adverse employment decisions in retaliation for complaining about what she perceived to be sexual harassment in her workplace. Such employer conduct is made unlawful by 42 U.S.C. § 2000e–3(a). The district court granted summary judgment in favor of Jefferson. It concluded that Mrs. Holland had failed to establish the existence of any genuine issue of material fact with regard to whether Jefferson's reasons for its employment decisions were merely pretextual. We reverse and remand.

## I.

### Background

A. *Facts*

Carolyn Holland was employed continuously by Jefferson as a clerical employee for more than thirteen years, from July 1972 until her termination in January 1986. Mrs. Holland's employment with Jefferson was terminated pursuant to Jefferson's medical leave policy on January 16, 1986, when she was not returned to her former position or some other full-time position with the company at the conclusion of her second maternity leave. Jefferson's policy gives the supervisor of an employee requesting any medical leave the option of holding open the employee's position or seeking a replacement for the employee. If the position is filled with a replacement and the employee is not placed in a similar

position within thirty days of being released for work by a physician, or if the employee turns down a comparable position, the employee is terminated.

Mrs. Holland took her first maternity leave in 1981, when she was working in Jefferson's Mortgage Loan Department. At that time, her supervisor held her position open for her during her maternity leave and she returned to her position in that department at the conclusion of her leave.

In March 1982, Mrs. Holland was transferred to Jefferson's Advanced Sales and Pensions Department, and, in August 1984, she was promoted to the position of Technical Administrative Assistant. Her duties in this position extended beyond the usual secretarial functions and were apparently quite demanding. She spent a good deal of her time operating a microcomputer and training other employees in its use, and she began working with a number of different software packages. In addition, in February 1985, Mrs. Holland began to work a good deal with the "InsMark" software package. Working with this software package took up sixty to seventy percent of Mrs. Holland's time.

In August 1984, Darwin Carmichael took charge of the Advanced Sales and Pension Department and therefore became Mrs. Holland's direct superior. Later that year, Mark Schaffer was hired as Director of Advanced Sales. In this position, he reported to Carmichael. Mrs. Holland began doing some work for Schaffer, although she still reported to Carmichael.

Mrs. Holland learned that she was pregnant in late March 1985. She immediately informed Carmichael that she would have to go on maternity leave later in the year and asked him if there "would be any problem with [her] job in his department." Mrs. Holland states that he told her there would be "[n]o problem" and specifically informed her that she would be coming back to her position. Holland Affidavit at

9. Mrs. Holland also states that, in June 1985, just before she was to take leave for a week in order to have surgery performed, Carmichael informed her that other persons in the department would share her workload while she was out. She maintains that he also told her that the other persons would share her work during her maternity leave, and he told her again that she would have her job back when she returned from maternity leave. *See id.* at 10. Carmichael denies ever having promised Mrs. Holland that he would hold her position open during her maternity leave.

Mrs. Holland went on vacation in late July and returned early in August. Around this time, she was asked to participate in the preparation of a revised job description for her position. Carmichael prepared copies of her old job description and gave one each to Mrs. Holland, Schaffer, Deanna Lousche (who also worked closely with Mrs. Holland), and himself. They were each to use the old job description in preparing updated rough drafts of a new job description. These rough drafts were then collected by Carmichael and given to Mrs. Holland so that she could incorporate them into one revised job description. When Mrs. Holland examined the rough draft prepared by Schaffer, she discovered that, under the caption "Physical Demands," he had scrawled "Big Boobs." Mrs. Holland states that she immediately complained to Carmichael about this comment. She also states that, in response to her complaint, Carmichael laughed and said, "That's just Mark." Holland Affidavit at 11. Mrs. Holland then asked him if he thought the EEOC would consider this a joke, and he replied, "Carolyn, you wouldn't." *Id.* She then asked him to do something about this problem. She maintains that Carmichael never took any action with regard to her complaint. Carmichael contends that Mrs. Holland never voiced any complaint on this subject at all.[1] A

---

1. Mrs. Holland also contends that she complained about Schaffer's conduct in December 1984. At that time, Schaffer circulated around the office wearing a Santa Claus suit. Some of the women in the office took the opportunity to sit on "Santa's" lap. Mrs. Holland states that Carmichael called her into his office and informed her that "Mr. Schaffer's lap wasn't where he wanted me to sit.... Mark said he was going to wash his face so Carolyn would

few days later, Mrs. Holland called the EEOC to ascertain its office hours. She wrote the telephone number on a piece of scratch paper labeled "EEOC," and left the paper on top of her desk when she went to lunch.

Mrs. Holland maintains that, approximately one week later, Carmichael informed her that he would not be able to keep her job open for her during her maternity leave. When Mrs. Holland asked why the other office employees could not share her work as they had before, Carmichael responded, "We just can't, Carolyn." Holland Affidavit at 12. Jefferson asserts that Carmichael had made a determination that Mrs. Holland's position was of "such a technical nature and so critical to the operation of the department and her position's workload was so great," that the position would have to be filled during her maternity leave. Appellee's Br. at 5. Mrs. Holland also states that Carmichael gave her the lowest performance rating that she had received in thirteen years with Jefferson after she complained about Schaffer's conduct.

Mrs. Holland began her maternity leave on October 4, 1985. When she received her last paycheck, she also received a check for her annual pay increase. She had elected to take the future merit increase in a lump sum at the start of her leave. She maintains that the personnel office told her she could take her increase in a lump sum since she was coming back after her leave. See Holland Affidavit at 13. However, when Carmichael gave her the check, he told her she was "just going to have to pay it back." Id. at 14. Pursuant to company policy, any lump sum payment of a future merit salary increase must be repaid if an employee on leave does not return to work. See Appellant's Br. at 9–10 n. 3.

On November 15, 1985, three weeks before she was expected to be able to return to work, Mrs. Holland notified Jefferson's personnel office that it should begin to look for a position for her. She was told that there was a service representative position available in the Policyowner's Service Department, headed by Jack Dickey. Personnel told Mrs. Holland that she was qualified for the job, and she told them that she would take it. However, on December 6, Mrs. Holland was informed that the job had been filled by an outside hire because the opening had to be filled immediately and Mrs. Holland was not yet available to return to work. However, the person chosen to fill the job did not begin working until December 30, 1985, two weeks after Mrs. Holland's physician authorized her to return to work. Dickey had informed the personnel department that Mrs. Holland's job performance was not of the quality that he was seeking for the position. Although Carmichael had never informed Mrs. Holland that she was a poor employee, he told Dickey, just before Mrs. Holland was to begin her maternity leave, that she was not one of the company's better performers. In contrast, Carmichael recommended to personnel that Mrs. Holland be reemployed after her leave in a similar position at a similar grade.

Mrs. Holland visited Jefferson's office in mid-December 1985 to have her new baby's picture taken for the company newsletter. In early January, however, when she asked when the picture would be appearing, she was told that the picture had been thrown away and would not appear because Mrs. Holland would not be returning to Jefferson. Mrs. Holland received this information *before* January 16, 1986, when the Jefferson leave policy's thirty-day grace period had expired and she was terminated.

---

have a clean place to sit." Holland Affidavit at 7–8. Carmichael then laughed. Mrs. Holland told Carmichael that she didn't appreciate the comment and asked him to tell Schaffer to watch his mouth. Although Carmichael allegedly told Mrs. Holland that he would talk to Schaffer about the comment, Carmichael never told Mrs. Holland that he had done anything about it. *Id.* at 8. In his deposition testimony, Carmichael admitted that he had had another complaint about Schaffer's loud and boisterous personality ("the sort of person that can alienate people"), and he stated that Schaffer was prone to sexual innuendo and told dirty jokes. R.23 at Carmichael Deposition, pp. 36–37; *see also* R.30 at Skirvin Deposition, pp. 17–18 (head of personnel had received complaints that Schaffer was loud at times and occasionally used vulgarity).

Mrs. Holland contends that both Carmichael's August 1985 decision not to keep her job open during her maternity leave and Dickey's December 1985 decision not to hire her for the service representative position were made in retaliation for her complaints about Schaffer's conduct.

## B. *District Court Opinion*

The district court granted Jefferson's motion for summary judgment. Although it recognized that Mrs. Holland understandably may have been "insulted and highly offended" by Schaffer's comments, the court noted that the "isolated incidents" that Mrs. Holland complained of were not "sufficiently severe and pervasive" to constitute actionable sexual harassment. *See Holland v. Jefferson Nat'l Life Ins. Co.*, No. IP 87–112–C, mem. op. at 5–6 (S.D.Ind. July 1, 1988); R. 24 at 5–6 [hereinafter Mem. op.]. The court then turned to Mrs. Holland's retaliation claim.

The district court analyzed Jefferson's summary judgment motion on Mrs. Holland's retaliation claim under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The court assumed *arguendo* that Mrs. Holland had established a prima facie case of illegal retaliation and moved on to the question of whether Jefferson had provided a legitimate nondiscriminatory reason for not holding her job open during her maternity leave and failing to offer her the service representative position that became available while she was on leave. The court concluded that, with respect to both of these employment decisions, Jefferson had provided legitimate, nondiscriminatory, and nonretaliatory reasons for its actions. The decision not to hold Mrs. Holland's job open during her leave was justified by Carmichael's assertion that the job was too technical and important to be filled by a temporary employee. Mrs. Holland herself admitted that her workload was "extremely heavy," and Carmichael maintained that he had told Mrs. Holland that the nature of her job and the fact that the department was short-handed precluded him from holding her job

open for three months while she was on maternity leave. Mem. op. at 7.

The district court's conclusion that Jefferson had put forth a legitimate reason for not offering her the service representative position was supported by the affidavit and deposition of Jack Dickey, the department manager responsible for filling the position. Dickey stated that the person ultimately selected for the position, Deborah Nemes, had more directly relevant experience as a service representative—Mrs. Holland allegedly had never done customer service work—and Dickey maintained that Jefferson could pay Ms. Nemes substantially less than it would have had to pay Mrs. Holland. Moreover, based on his own personal knowledge of Mrs. Holland and comments by Carmichael that her performance was not of high quality, Dickey concluded that Mrs. Holland was not one of Jefferson's "star performers." Mem. op. at 8. Dickey noted that Mrs. Holland was not even considered the number two contender for the job.

Because Jefferson offered legitimate reasons for its employment decisions, the burden shifted to Mrs. Holland to show that its proffered reasons were merely pretextual. The court explained that, in order to survive Jefferson's summary judgment motion, Mrs. Holland would have to demonstrate by specific factual allegations that a material factual issue existed as to whether, but for her complaints about Schaffer, Carmichael would have kept her job open or Dickey would have hired her rather than Ms. Nemes. The court concluded that Mrs. Holland failed to make this showing.

Mrs. Holland contended that Carmichael's explanation for failing to keep her position open was pretextual because he had twice earlier reassured her that he would not replace her while on leave. The district court rejected this argument, however, because Mrs. Holland had offered no evidence connecting Carmichael's alleged later change of mind with her complaints to him about Schaffer. In addition, the court noted that, in her deposition testimony, Mrs. Holland was not sure whether she had complained to Carmichael about Schaffer's

comment on the job description before Carmichael informed her that her job would not be kept open or after. Her affidavit, prepared one year later, stated that she complained to Carmichael approximately one week before he told her she was to be replaced when she went on leave. The court concluded that Mrs. Holland failed to explain this discrepancy between her affidavit and earlier deposition testimony.

With regard to Dickey's decision to offer the service representative position to Ms. Nemes rather than Mrs. Holland, the district court rejected Mrs. Holland's contention that Carmichael had "blackballed" her in retaliation for complaining about Schaffer's comments. The court noted that the only evidence supporting this argument was the fact that Carmichael had had a conversation with Dickey in September or October 1985 in which he stated that Mrs. Holland's job performance was not outstanding. The court found this evidence insufficient because the service representative job did not become available until late November 1985; "Plaintiff offers no explanation of how, in September or October, Carmichael could have been intentionally blackballing Holland for a job for which she did not apply until late November." Mem. op. at 10.

The district court found that, viewing Mrs. Holland's factual allegations in the light most favorable to her, no rational trier of fact could conclude that, but for Mrs. Holland's complaints about Schaffer, Carmichael would have kept her position open and Dickey would have selected her rather than Ms. Nemes. Thus, the court granted Jefferson's motion for summary judgment.

## II.

### Analysis

#### A. *Applicable Standards*

We review the district court's decision to grant a summary judgment motion *de novo* and use the same standard of decisionmaking employed by the district court. *See McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir.1989); *Christianson v. Colt Indus.*

*Operating Corp.*, 870 F.2d 1292, 1299 (7th Cir.1989), *petition for cert. filed*, June 20, 1989. Therefore, we shall affirm the district court's grant of summary judgment when there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *See id.*; Fed.R. Civ.P. 56(c). In making this determination, we must view the record and all inferences drawn from it in the light most favorable to the party opposing the motion. *Morgan v. Harris Trust & Sav. Bank*, 867 F.2d 1023, 1026 (7th Cir.1989) (per curiam); *Beard v. Whitley County REMC*, 840 F.2d 405, 409–10 (7th Cir.1988). However, when the party opposing the motion bears the burden of proof on a particular issue, it cannot rest on its pleadings alone. Rather, it must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact requiring trial. *Beard*, 840 F.2d at 410. The party opposing the motion must do more than merely raise " 'some metaphysical doubt as to the material facts' " in order to survive summary judgment. *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted)). Where the factual allegations presented by the party opposing the motion would not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and the district court's judgment granting the summary judgment motion should be affirmed. *See id.*; *see also Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570–71 (7th Cir.1989).

We have stated that "[s]ummary judgment is infrequently an appropriate resolution" of a Title VII case. *Powers v. Dole*, 782 F.2d 689, 694 (7th Cir.1986). However, we have also recognized that summary judgment is not always inappropriate simply because issues of motive or intent are raised in the case. *See McMillian, supra*, 878 F.2d at 188–89; *Morgan*, 867 F.2d at 1026; *Beard*, 840 F.2d at 410. Even when the issue of discriminatory intent is at stake, "summary judgment is proper 'where the plaintiff presents no indication of motive or intent supportive of his position.' " *Powers*, 782 F.2d at 694 (quoting

*Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985)). We must, however, approach the question of summary judgment with "special caution" in discrimination cases. *McMillian, supra,* 878 F.2d at 188; *Beard,* 840 F.2d at 410.

## B. *Application of Standards to this Case*

■■■ In determining whether Mrs. Holland has made sufficient factual allegations to withstand Jefferson's summary judgment motion, we must examine her Title VII claim pursuant to the burden-shifting framework enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, we must first ask whether the plaintiff can establish a prima facie case of discrimination. If the plaintiff successfully establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its challenged action. Once such a reason has been articulated, the burden shifts back to the plaintiff to show that the articulated reason is pretextual. This can be accomplished by showing, through circumstantial evidence, that the employer's articulated explanation is not worthy of credence. Such a showing permits an inference of discrimination. *See Burdine,* 450 U.S. at 252–56, 101 S.Ct. at 1093–95; *McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. at 1824–26; *McMillian, supra,* 878 F.2d at 188–89; *Reeder–Baker v. Lincoln Nat'l Corp.,* 834 F.2d 1373, 1377 (7th Cir.1987).[2] We therefore turn to the question of Mrs. Holland's prima facie case.

### 1. Prima facie case of retaliation

■■■ Section 704 of Title VII of the Civil Rights Act of 1964 makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliation under Title VII, Mrs. Holland must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action. *See, e.g., Jennings v. Tinley Park Community Consol. School Dist. No. 146,* 796 F.2d 962, 966–67 (7th Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1895, 95 L.Ed.2d 502 (1987); *Klein v. Trustees of*

---

**2.** The analysis employed in *Price Waterhouse v. Hopkins,* —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the Supreme Court's recent decision discussing the appropriate allocation of the burdens of proof in Title VII cases involving "mixed motives," is inapplicable in this case. The Court there held that, "once a plaintiff in a Title VII case shows that gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role." 109 S.Ct. at 1787–88 (footnote omitted). Where the plaintiff has not shown that both illegitimate and legitimate motives entered into an employer's decision and instead seeks to prove that the employer's stated reason for its actions is not *the* true reason (i.e., is a pretext for discrimination), then the *McDonnell Douglas/Burdine* framework, rather than the *Price Waterhouse* analysis, is to be applied. *See* 109 S.Ct. at 1788 ("[o]ur holding casts no shadow on *Burdine*"); *see also* 109 S.Ct. at 1804 ("in order to justify shifting the burden on the issue of causation to the defendant, a disparate treat-

ment plaintiff must show by direct evidence that an illegitimate criterion was a substantial factor in the decision") (O'Connor, J., concurring in the judgment); *Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563 (7th Cir. 1989):

> [W]here a plaintiff is able to prove through direct evidence that the employment decision at issue was based upon an impermissible factor, he or she has carried the initial burden of proof. At that point, the analysis and burdens associated with the "pretext" inquiry outlined in *McDonnell Douglas* and affirmed in *Burdine* are irrelevant because plaintiff has directly proved that impermissible factors have come into play.

*Randle, supra,* 876 F.2d at 568–69. Because Mrs. Holland has not presented any *direct evidence* that impermissible factors influenced Jefferson's employment decisions and, instead, seeks to show that Jefferson's articulated justifications are merely pretextual, the *McDonnell Douglas* framework, rather than the *Price Waterhouse* analysis, must be applied in this case.

*Indiana Univ.*, 766 F.2d 275, 280 (7th Cir. 1985); *Reeder–Baker v. Lincoln Nat'l. Corp.*, 649 F.Supp. 647, 657 (N.D.Ind.1986), *aff'd*, 834 F.2d 1373 (7th Cir.1987). In order for the plaintiff's expression to be protected by section 2000e–3(a), the challenged practice need not actually violate Title VII. Instead, it is sufficient if the plaintiff has a reasonable belief that she is challenging conduct in violation of Title VII. *See Jennings*, 796 F.2d at 967 (citing *Berg v. La Crosse Cooler Co.*, 612 F.2d 1041, 1045–46 (7th Cir.1980)); *see also Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179, 1182 (7th Cir.1982) (section 2000e–3(a) protect's employee opposition even if employee mistaken and no discrimination existed; "[t]he mistake must, of course, be a sincere one; and presumably it must be reasonable").

■ We believe that Mrs. Holland has set forth evidence sufficient to establish a prima facie case of unlawful retaliation.

She clearly has put forward specific factual allegations demonstrating that she suffered adverse action by her employer—Carmichael refused to hold her job open during her maternity leave, and Dickey failed to offer her a job in his department after Carmichael told him that Mrs. Holland's job performance was not outstanding. In addition, assessing the record in the light most favorable to her, Mrs. Holland has demonstrated a causal link between her opposition to Schaffer's conduct and Jefferson's adverse employment decisions. The trier of fact would be entitled to conclude that, even though Carmichael had earlier promised to hold Mrs. Holland's job open during her maternity leave, he decided to replace Mrs. Holland shortly after she complained about Schaffer's conduct.[3] In addition, after making her second complaint about Schaffer, Mrs. Holland received the lowest performance rating that she had received

---

3. The district court concluded that Mrs. Holland had not offered any evidence connecting Carmichael's change of mind with her complaints about Schaffer. It disregarded her affidavit, which stated that her complaint preceded Carmichael's decision to replace her, because there was a "discrepancy" between her deposition and her affidavit (which had been prepared a year after her deposition had been taken). *See* mem. op. at 9 (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir.1985)). Jefferson also contends that Mrs. Holland's assertion that her complaint to Carmichael preceded his decision not to hold her job open is precluded by her deposition testimony. *See* Appellee's Br. at 28. We reject this contention.

In *Babrocky*, we explained that a party cannot create a sham issue of fact by "directly contradict[ing] her own earlier statements, without explaining the contradiction or attempting to resolve the disparity." 773 F.2d at 861 (affidavits contained "bald assertions" contradicting "unequivocal[ ]" admissions in depositions); *see also Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir.1987) ("It is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony."). Mrs. Holland's affidavit presents no direct contradiction of any plain or unequivocal admission in her deposition. In her deposition, Mrs. Holland stated that she learned that she would not be returned to her position after her leave when she came back from vacation around August 12, 1985. She could not, however, recall whether she had seen Schaffer's offensive comment before or after her vacation.

*See* Holland Deposition at 110–12. In her affidavit, Mrs. Holland merely clarified the sequence of events: She returned from vacation on August 5, saw the comment and complained to Carmichael on August 12 or 13, and learned that her job would not be held open about one week later. *See* Holland Affidavit at 10–12. In short, this is not a situation where "a plaintiff has directly contradicted her own earlier statements, without explaining the contradiction or attempting to resolve the disparity." *Babrocky*, 773 F.2d at 861. There is "no inherent inconsistency" between the affidavit and the disposition. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir.1987). As Judge Wood has written for this court:

> Parties cannot thwart the purpose of Rule 56 by creating issues of fact through affidavits that contradict their own depositions. An inconsistent affidavit may preclude summary judgment, however, if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth the newly-discovered evidence.

*Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir.1985) (citations omitted). Here, Mrs. Holland's affidavit answers a question—a key question—that was never put to her squarely in the deposition: did she see the Schaffer notation before she was told her position would not be kept open? Moreover, the obvious confusion in her deposition because of her failure to recall her vacation dates was explained by her reference to specific steps she had taken to refresh her recollection and to specific meetings with EEOC officials.

during her tenure at Jefferson. For the purposes of establishing a prima facie case, this "telling" temporal sequence demonstrates a causal link between Mrs. Holland's opposition and Jefferson's adverse action. *See Reeder–Baker*, 649 F.Supp. at 657 ("The sequence of events is telling. Baker complained about her evaluation and raised the issue of Lincoln's racial policies. Then she applies for the position of Operations Manager and again challenges Lincoln's policies. She was then put on 'permanent probation.' "); *Eastland v. Tennessee Valley Auth.*, 704 F.2d 613, 627 (11th Cir.1983) ("Evidence that the adverse treatment followed closely upon the protected activity ... may be sufficient to establish a causal connection."); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1141 n. 13 (5th Cir. Unit A 1981) (inference of causal relationship proper where adverse employment action occurred "within a relatively short time after" protected activities took place), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982).[4]

We also believe that Mrs. Holland has put forward evidence demonstrating that she had a reasonable and sincere belief that she was opposing a practice made unlawful by Title VII. The sincerity of her belief is amply supported by her assertion that she threatened to take her complaint about Schaffer to the EEOC and did in fact subsequently contact the EEOC. We also believe that Mrs. Holland could reasonably have believed she was opposing unlawful sexual harassment. Mrs. Holland complained of two sexually offensive remarks made by Schaffer, and she has put forward evidence that other employees had complained about Schaffer's use of vulgar language in the workplace. Moreover, Mrs.

Holland maintains that, despite her complaints to her supervisor, Carmichael, about Schaffer's conduct, he took no corrective action.

This sort of workplace conduct is the type of activity that, under some circumstances, supports a charge of sexual harassment. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Conduct that *may* be actionable under Title VII includes " 'verbal or physical conduct of a sexual nature' " that " 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " 477 U.S. at 65, 106 S.Ct. at 2404 (quoting EEOC Guidelines, codified at 29 C.F.R. § 1604.11(a)); *see also Scott v. Sears, Roebuck & Co.*, 798 F.2d 210, 213 (7th Cir.1986) ("after *Meritor* there is no mistaking the acceptability of the EEOC definition ... found at § 1604.11(a)"). While the acts of harassment alleged by Mrs. Holland may not have been "sufficiently severe or pervasive 'to alter the conditions of [her] employment and create an abusive working environment' " independently actionable under Title VII, *see Meritor*, 477 U.S. at 67, 106 S.Ct. at 2405 (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir.1982)),[5] we do not believe that Mrs. Holland unreasonably believed that the conduct of Schaffer and Carmichael was in violation of the law. A plaintiff raising a retaliation claim must have a reasonable belief that she is opposing unlawful discrimination "for it seems unlikely that the framers of Title VII would have wanted to encourage the filing of utterly baseless charges by preventing employers from disciplining the employees who made them." *Rucker*, 669 F.2d at

---

**4.** *See also Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.1985) ("causal link" element of prima facie case merely requires plaintiff to "establish that the protected activity and the adverse action were not wholly unrelated"), *cert. denied*, 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985).

**5.** *See also Scott*, 798 F.2d at 213 ("the threshold issue in individual [sexual harassment cases] is whether the instances of harassment alleged by the plaintiff rise to a level of 'hostility' offensive enough to be considered actionable"); *id.* at

213–14 (conduct was not so severe and pervasive so as to create an actionable hostile environment where plaintiff offered one concrete example of being offensively propositioned, other alleged suggestions and "hints" were not so "pervasive or psychologically debilitating that they affected [plaintiff's] ability to perform on the job," and other conduct alleged was "too isolated and lacking the repetitive and debilitating effect necessary to maintain a hostile environment claim").

1182. We cannot say that Mrs. Holland's allegations of misconduct are "utterly baseless." [6] We therefore conclude that Mrs. Holland has presented sufficient evidence to establish a prima facie case of unlawful retaliation.

### 2. Evidence of Pretext

■ The district court concluded that Mrs. Holland had failed to offer evidence supporting her contention that Jefferson's articulated legitimate reasons for its decisions were merely pretextual. Here, we find ourselves in respectful disagreement. Jefferson asserts that Mrs. Holland's job was too technical and her workload too heavy for her position to have been filled by a temporary employee during her maternity leave. Mrs. Holland, however, asserts that her workload had been extremely heavy for more than a year before Carmichael informed her that her position would not be held open during her maternity leave. She maintains that her workload did not increase between the spring of 1985 when Carmichael twice promised her that her position would be held open and August 1985 when he told her that she would be replaced during her leave. *See, e.g.,* Holland Affidavit at 5, 6, 8–10; Holland Deposition at 23–26, 28–29; Appellant's Br. at 24. When this evidence is viewed in the light most favorable to Mrs. Holland, a reasonable fact finder could infer that Jefferson's articulated reason for not holding her job open is not worthy of credence.

Mrs. Holland has also presented evidence showing that, between January 1984 and May 1986, sixteen of the twenty Jefferson employees who went on maternity leave returned to work with Jefferson at the conclusion of their leave. Moreover, fifteen of those twenty employees were returned to the same position that they had held before their leave. *See* Appellant's App. at 56–58. Only two of those employ-

ees (including Mrs. Holland) were terminated pursuant to the medical leave policy. *Id.* A reasonable factfinder could infer from such evidence that Jefferson's usual practice was to return employees to their former positions at the conclusion of a maternity leave.

■ Jefferson has maintained that it did not offer Mrs. Holland the service representative position because she was not qualified for customer service work and her job performance was not of high quality. Mrs. Holland asserts, however, that the Jefferson staff member responsible for clerical hiring told her that she *was* qualified for the service representative position. *See* Holland Affidavit at 14. Mrs. Holland also asserts that her duties in Jefferson's Mortgage Loan Department had included customer service work. Holland Supplemental Affidavit at 2. Moreover, despite giving Dickey the impression that Mrs. Holland was not one of Jefferson's "star performers," *see* Dickey Deposition at 8–9, Carmichael recommended to the personnel department that Mrs. Holland be placed in a job similar to what she had been doing when she returned from her leave. *See* Carmichael Deposition at 46.[7] Finally, the personnel department informed Mrs. Holland that she was not offered the service representative position because it had to be filled before she could return to work. *See* Holland Affidavit at 14; Skirvin Affidavit at 6. The person selected for the position, however, began work on December 30, 1985. *See* Dickey Deposition at 15. Mrs. Holland's doctor authorized her to return to work on December 16. All of this evidence, when viewed in the light most favorable to Mrs. Holland, supports an inference that Jefferson's articulated rationale for failing to offer her the service representative position is a pretext for discrimination. Because a genuine issue of fact exists as to whether Jefferson's proffered reasons for

---

6. *See also Rucker,* 669 F.2d at 1182 ("it is good faith and reasonableness, not the fact of discrimination, that is the critical inquiry in a retaliation case"); *Berg,* 612 F.2d at 1045 (plaintiffs "should not be burdened with the sometimes impossible task of correctly anticipating how the Supreme Court may interpret a particular statute").

7. At his deposition, Dickey could not recall any specific examples of poor job performance on the part of Mrs. Holland. *See* Dickey Deposition at 10.

its adverse employment decisions were in fact its true reasons for those decisions, the district court should not have entered summary judgment in favor of Jefferson.

## Conclusion

The judgment of the district court is reversed and the case is remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.