Gema SALVADORI, Plaintiff,

v.

FRANKLIN SCHOOL DISTRICT, Marie Glasgow, Dona Schwichtenberg, Franklin Education Association, and Wisconsin Education Association Council, Defendants.

No. 98–C–1256.

United States District Court,
E.D. Wisconsin.

Sept. 25, 2001.

Quindel, Perry ·Lerner Quintel & Saks, Milwaukee, WI, for defendants.

STADTMUELLER, Chief Judge.

## ORDER

All defendants in this case have filed motions for summary judgment. For the reasons outlined below, the court will grant summary judgment for each defendant on all counts.

## BACKGROUND

The plaintiff in this action, Gema Salvadori, is an Asian woman of Philippine descent. She was employed by the Franklin School District ("FSD") as a science teacher beginning with the 1990–91 school year and continuing through the 1997–98 school year. Throughout her tenure, Salvadori has had disagreements with school administrators, parents, and students concerning her classroom methods.

Salvadori began teaching at Forrest Park Middle School in 1990. While assigned there she was the subject of several poor performance evaluations in addition to parent complaints. Following the 1995–96 school year, FSD placed her on a plan of assistance. The plan of assistance was intended to assist Salvadori in improving her performance. She continued to have performance problems while on the plan of assistance, so FSD transferred her to the high school for the 1997–98 school year. In addition, because of her poor performance, FSD denied Salvadori a salary increase for the 1997–98 school year. The complaints continued during the 1997–98 school year, and at the end of the year, the school board decided not to renew Salvadori's contract.

The defendants can be grouped in two categories: 1) the school district, comprised of FSD, Marie Glasgow, and Dona Schwichtenberg; and 2) the unions, com-

Willie J. Nunnery, Nunnery Law Office, Madison, WI, Vel Phillips, Phillips Law Office, Milwaukee, WI, for plaintiff.

Mark L. Olson, John E. Murray, Davis & Kuelthau, Wilwaukee, WI, Barbara Z.

prised of the Franklin Education Association ("FEA") and the Wisconsin Education Association Counsel ("WEAC"). Both sets of defendants support their motions for summary judgment, and the factual predicates underlying the same, with substantial evidentiary materials, including detailed affidavits and deposition transcripts from the parties and officials involved. Based on these submissions, and pursuant to Local Rule 56.2, the defendants also submitted separately numbered proposed findings of fact. Under Rule 56.2, plaintiff was required to submit "[a] specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must cite evidentiary materials which support the claim that a dispute exists." Local Rule 56.2(b)(1). Moreover, "[i]n deciding a motion for summary judgment, the court will conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out." Local Rule 56.2(e). Plaintiff has not satisfied her obligations under Rule 56.2. In plaintiff's response to the unions' proposed findings of fact, the plaintiff has one of three answers for each proposed finding of fact: admitted, disputed, or admitted in part and disputed in part. None of the responses cites to any evidentiary material. In the case of the school district's proposed findings of fact, only 15 of 306 responses included citations to the record. Even these do not contradict the school district's findings of fact. Because the plaintiff has not contested any of the factual findings proposed by the defendants as contemplated under Local Rule 56.2, the court is permitted to conclude that the facts, as identified by the defendants in their proposed findings of fact, are undisputed. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–922 (7th Cir.1994) ("We have ... repeatedly upheld the strict enforcement of [local rules regarding summary judgment obligations], sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.").

## DISCUSSION

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party may meet its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, "set[ting] forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Factual disputes are "material" only when they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, if the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because "a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Factual disputes are "genuine" only "if the evidence is such that a reasonable jury could return a verdict

for the [nonmovant]." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. The evidence must create more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In deciding a summary judgment motion, therefore, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. 2505. It must accept as true the nonmoving party's evidence and draw all reasonable and justifiable inferences in favor of that party. *See id.* at 255, 106 S.Ct. 2505. The court will address FSD's motion first, followed by the unions' motion.

**Franklin School District's Motion for Summary Judgment**

**I. Procedural Due Process Claim**

■ Salvadori first claims that the FSD deprived her of liberty without due process of law when they did not renew her contract. FSD has moved for summary judgment on this claim, arguing that Salvadori received all process required by the Constitution. The court agrees. "Due process requires that a government employer provide a pretermination hearing in which the employee receives notice of and the reasons for the prospective termination and has an opportunity to respond to the charges." *Greer v. Amesqua,* 212 F.3d 358, 367 (7th Cir.2000) (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)).

Salvadori received Constitutional due process. The Board of Education notified Salvadori of the following potential bases for non-renewal of her contract: 1) her inability to demonstrate effective teaching strategies; 2) her inability to create an atmosphere conducive to good learning; 3) her marginal progress in attaining defined goals; 4) her lack of demonstrated professional growth; 5) her unwillingness or inability to assist in solving problems; 6) her lack of demonstrated cooperation with others; and 7) her marginal acceptance of responsibility for routine matters. *See* FSD's proposed findings of fact [hereinafter FPFF] at ¶ 287. The notice informed Salvadori of her right to request a hearing and to have counsel present. *See id.* ¶ 288. Salvadori received a hearing on April 8, 1998, where she was represented by counsel. *See id.* at ¶¶ 293–95. At the hearing, Dr. Glasgow presented the bases for non-renewal to the Board, and Salvadori was given an opportunity to respond. *See id.* at ¶¶ 296, 298. After the hearing, the Board voted not to renew Salvadori's contract. *See id.* at ¶ 299.

Salvadori argues that the Board's hearing was a sham. "Due process requires that, prior to termination, an employee be given the chance to tell her side of the story, and that the agency be willing to listen. Otherwise, the 'opportunity to respond' required by *Loudermill* is no opportunity at all." *Ryan v. Illinois Dept. of Children and Family Services,* 185 F.3d 751, 762 (7th Cir.1999) (citations omitted). While the decision makers may tentatively believe that the employee should be terminated, they must still be open to other views. *See id.* In this case, there is no evidence to suggest that the members of the Board of Education were not open to other views. David Szychlinski, a member of the board, testified that the evidence presented at Salvadori's nonrenewal hearing convinced him that nonrenewal was warranted. *See* Szychlinski Dep. at p. 37. While Salvadori suggests that a number of actors may not have wanted Salvadori to retain her position, she does not allege, nor is there any evidence in the record to suggest that any of the members of the Board of Education were predisposed not to renew her contract. The only evidence

the court located regarding the board is the testimony of Szychlinski that he was convinced by the evidence at the hearing. Therefore, the court will grant FSD's motion for summary judgment on the due process claim.

## II. Retaliation claim

■■■ Salvadori next claims that FSD retaliated against her for complaining about discriminatory practices in violation of 42 U.S.C. § 1981, § 1983, and § 2000e–2. To establish a prima facie case of retaliation Salvadori must show: 1) she engaged in statutorily protected expression; 2) she suffered an adverse action by her employer; and 3) there is a causal link between the protected expression and the adverse action. *See Dey v. Colt Const. & Development Co.*, 28 F.3d 1446, 1457 (7th Cir.1994) (citing *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir.1989)). According to the plaintiff, FSD retaliated against Salvadori as a result of her filing charges with the EEOC. *See* Pl.'s Brief in Opposition to Motion for Summary Judgment at p. 31. The plaintiff states "the court should focus on what happened on or after June 3, 1997 [the date FSD received notification that the plaintiff filed a complaint with EEOC]." *Id.* According to Salvadori, the FSD retaliated in four ways: 1) denying Salvadori a salary increase for the 1997–98 school year; 2) reassigning Salvadori to the high school; 3) giving Salvadori a challenging class schedule at the high school; 4) monitoring Salvadori's teaching in the high school. *See id.* at p. 31–33.

According to the plaintiff, she received a letter dated June 10, 1997, that informed her that she was going to be denied her salary increase for the 1997–98 year. However, as plaintiff notes, the letter states that this decision was made on May 28, 1997. *See id.* at p. 31; Murray Aff. Ex. 53. The plaintiff alleges that any retaliation was committed as a result of plaintiff's

filing of EEOC charges on June 3; however, Salvadori fails to point to any evidence suggesting that the decision to deny the increase was made after the May 28 date stated in the letter. Obviously, a decision on May 28 to deny a pay increase could not be retaliation for something the defendant did not know about until June. In the same vein, Salvadori was reassigned to the high school and given her class schedule by letter dated May 13, 1997. *See* Murray Aff. ex. 54; Def's ex. 60. Salvadori has introduced no evidence to suggest that the date on the letter is inaccurate. Again, because of problems with chronology, this could not be a case of retaliation.

Lastly, Salvadori argues that once at the high school, she was subject to heightened supervision. The court is dubious that such supervision constitutes adverse employment action, but even if it were, the plaintiff has failed to show a causal connection between the supervision and the protected speech. It is undisputed that immediately prior to the increased supervision, the defendants received a complaint from a parent concerning Salvadori's in-class behavior. *See* FPFF at ¶¶ 250–54. This, coupled with the fact that the increased supervision began in September (three months after the EEOC complaint), dispels the notion that the supervision was retaliatory.

## III. Salvadori's race/ethnic origin claims

Salvadori has also charged that FSD decided not to renew her contract because of her race and/or ethnic origin. FSD argues that Salvadori has not presented sufficient evidence for a jury to find that she was treated less favorably than similarly situated Caucasian teachers because of her race. A plaintiff may establish discrimination at the summary judgment stage through either the "direct" or "indi-

rect" method. *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir.1999).

Because employers usually are "careful not to offer smoking gun remarks indicating intentional discrimination," the burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), provides a means of evaluating indirect evidence of discrimination at the summary judgment stage. *Robin*, 200 F.3d at 1088.

Under the indirect method, the plaintiff must establish a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *see also Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 672 (7th Cir.2000). If the employer then offers a nondiscriminatory reason for the employment action, the plaintiff must submit evidence that such an explanation is pretextual. *See Bellaver*, 200 F.3d at 493.

Specifically, a Title VII plaintiff establishes a prima facie case of sex discrimination by showing: (1) she was a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably. *See Simpson v. Borg–Warner Auto., Inc.*, 196 F.3d 873, 876 (7th Cir.1999). If the plaintiff fails to establish this prima facie case, the employer is entitled to summary judgment without the court's even reaching the two other steps of the *McDonnell Douglas* analysis—the employer's articulating a legitimate, nondiscriminatory reason for its action and the plaintiff's burden to demonstrate that the purported legitimate reason was instead pretext for unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. 1817.

■ FSD first argues that Salvadori fails to make out her prima facie case because she was not performing her job

satisfactorily. "The most obvious legitimate reason for the discharge of an employee is that the employee's inadequate job performance necessitated his termination." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 463 n. 4 (7th Cir.1986). The second factor in the *McDonnell Douglas* test is a two-part question: whether the employer's expectations were legitimate and if so, whether the employee was meeting those expectations. *See id.* "Although the inquiry into whether the employer's expectations were legitimate is a limited one the court must determine whether the employer communicated those expectations to the employee and whether those expectations were unreasonable." *Id.* (internal citations omitted).

The FSD position description for teachers includes the following requirements and evaluation criteria:

- Demonstrate effective teaching strategies so that teaching and learning experiences are meaningful to the students and focus on the students' learning needs.

- Create an atmosphere conducive to good learning, one that holds each student as unique, valuable, worthy of respect, and with a right to his or her own beliefs.

- Assist in problem-solving as it relates to the instructional process because education is a shared responsibility among family, community, students and educators.

- Avoid demeaning criticism of students.

- Have clear and fairly enforced behavioral expectations.

- Notify parents of any concerns the teacher may have in regard to the education of their child.

- Make constructive efforts to resolve problems rather than ignoring those

problems and blocking improvement strategies.

- Maintain a positive rapport with students, teachers, parents and administrators.
- React to constructive criticism in a positive manner.

See Murray Aff. ex. 18, Def.s' ex. 2. The record in this case is replete with evidence of Salvadori's failure to meet FSD's expectations. There are several examples of complaints from parents concerning Salvadori's inconsistent discipline, poorly defined grading criteria, and harsh criticism. See e.g. FPFF at ¶¶ 19, 68, 69, 72, 86, 87, 97, 102, 103, 222; Murray Aff. ex. 32. In addition, there were several performance evaluations which showed that Salvadori was not performing adequately. See e.g. FPFF at ¶¶ 30, 42, 269; Murray Aff. ex. 37, ex. 57.

The court holds that plaintiff has failed to make out a prima facie case under McDonnell Douglas. Because the plaintiff does not even argue McDonnell Douglas in her response brief, the court will not address the issue of pretext,[1] except to say that even if Salvadori had made out the prima facie case, her case would not have survived the second stage of McDonnell Douglas.

■ Salvadori has also argued that FSD violated the Equal Protection Clause of the Fourteenth Amendment. The prima facie case for a claim under the Equal Protection Clause is essentially the same as under McDonnell Douglas: Salvadori must show she is a member of a protected class, that she is "otherwise similarly situated to members of the unprotected class," and that she was "treated differently from members of the unprotected class." McNabola v. Chicago Transit Auth., 10 F.3d 501, 513 (7th Cir.1993) (citations omitted). Salvadori's response brief cites three violations by the defendants: 1) she was treated differently from another teacher who had students throw things at her; 2) FSD ignored her complaint that she was being harassed by high school students; and 3) she was denied a salary increase for the 1997–98 school year.

Salvadori first argues that students who threw chewed apples at her were not disciplined, while students who threw chewed apples at a white teacher were. FSD argues that the two teachers were not similarly situated. In Salvadori's case, her class visited the "environmental center," where a few boys apparently were throwing chewed apples at a condominium complex, and at Salvadori. Salvadori issued a discipline slip to one boy for throwing apples. See Murray Aff. ex. 41. According to FSD, Associate Principal Thomas Reinke investigated the incident and determined that Salvadori had disciplined the wrong boy. See id. Moreover, Reinke found that many of Salvadori's students were out of control that day, and were throwing things because of her lack of oversight. See id. Also, Salvadori took the entire class to Reinke's office in an attempt to discipline one particular child. See id. Salvadori argues that a white teacher, Jane Dailey, had apples thrown at her as well, and that these students were disciplined by Reinke. The court notes, that after studying Salvadori's brief, it can find no allegation that the perpetrators who threw apples at Salvadori were not punished, just that Reinke reprimanded Salvadori for disciplining the wrong party. Given the facts in the record, the court finds that the two teachers were not similarly situated.

---

1. The Seventh Circuit has stated, "[a] brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record." DeSilva v. DiLeonardi, 181 F.3d 865, 867 (7th Cir.1999).

■ Next Salvadori alleges that students at the high school made racially discriminatory statements, and that FSD failed to react. On September 25, 1997, Salvadori submitted a written complaint making allegations of inappropriate statements by students in the halls. The standard for the adequacy of FSD's response is negligence. *See Carr v. Allison Gas Turbine Div., General Motors, Corp.*, 32 F.3d 1007, 1009 (7th Cir.1994) (citations omitted). The court holds that on the evidence in the record, FSD did not respond in a negligent manner. The students were told that such behavior should stop immediately, and the school set up a system to monitor the hallways for offensive conduct. *See* Murray Aff. ex. 15, Schwichtenberg Dep. at 8:11–9:21.

■ Lastly, Salvadori argues that she was the only teacher not to get a pay increase, and therefore was treated differently. Salvadori presents no evidence, however, that any of the teachers who did receive pay increases were similarly situated to her. Accordingly, this claim fails as well.

## IV. Qualified Immunity

Lastly, FSD argues that defendants Marie Glasgow and Dona Schwichtenberg are entitled to qualified immunity. Because the court finds that Salvadori has not suffered any constitutional deprivations, the issue of qualified immunity is moot.

## Union Defendants' motion for summary judgment

■ The union defendants, the Franklin Education Association and the Wisconsin Education Association Council, have filed for summary judgment. As a preliminary matter, the court notes that the union defendants submitted a letter to plaintiff's counsel as an appendix to another motion in this case. *See* Union Defendants' Motion to Dismiss § 1983 Claim Against Def. James Gibson, Zack Aff., ex. A. This letter memorialized a conversation between the lawyers that established that the only claims against the union defendants were Title VII claims. The plaintiff has not disputed this point; therefore, the court will only discuss these claims.

To establish a prima facie case against a union under Title VII, a plaintiff must show: 1) the employer violated the collective bargaining agreement with respect to her; 2) the union let the breach go unrepaired, thereby breaching its own duty of fair representation; and 3) some evidence indicates that racial animus motivated the union. *See Greenslade v. Chicago Sun–Times Inc.*, 112 F.3d 853, 866 (7th Cir. 1997). In order to show that FEA breached its duty of fair representation, Salvadori must show that its actions were either "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Id.* (citations omitted)

Salvadori has set forth five alleged instances to make out the prima facie case against the union: 1) failing to represent her in regard to having a memo removed from her personnel file; 2) failing to properly handle the plan of assistance grievance; 3) proposing a settlement which included voluntary resignation after the first semester of the 1997–98 school year; 4) failing to provide legal assistance through a private attorney hired to represent plaintiff regarding her non-renewal; 5) failing to pursue the non-renewal grievance to arbitration. The court will address each in turn.

Salvadori asked FEA to assist her in dealing with a memo that was placed in her personnel file on December 7, 1995.

The FEA suggested having the letter re-written to change its tone, or for Salvadori to write a response to be attached to the memo. *See* Union proposed findings of fact [hereinafter UPFF] at ¶ 29–35. This was routinely recommended to teachers who received non-disciplinary letters in their file. *See id.* at ¶ 37. The plaintiff has cited no evidence to counter this; therefore, summary judgment is appropriate.

At the end of the 1995–96 school year, Salvadori was placed on a "plan of assistance" by the school district in an attempt to address perceived deficiencies in her teaching. *See id.* ¶ 38, 39. Salvadori claims that FEA breached its duty of fair representation in its handling of the plan of assistance. The FEA filed a grievance on the plan of assistance. *See id.* at ¶ 43. In response to the grievance, the district re-wrote the plan of assistance. *See id.* at ¶ 55, 56. Eventually, the district agreed that it would renew Salvadori's contract, and would drop the plan of assistance for a mutually agreeable coaching arrangement. *See id.* at ¶ 67, 68. FEA saw this as an opportunity to resolve the grievance and reach the stated goal of removing the plan of assistance and having it expunged from Salvadori's record. *See id.* at ¶ 69. Salvadori balked at the settlement. *See id.* at ¶ 72. However, it is undisputed that the settlement would have accomplished the stated goal of the grievance, i.e. the elimination of the plan of assistance. *See id.* at ¶ 46.

After the settlement was rejected, the FEA continued with the grievance, eventually arguing it before the superintendent. *See id.* at ¶ 77, 78, 80, 81. The grievance was not resolved, and the decision had to be made whether to take it to an arbitrator. FEA considered the law and facts involved and decided not to go to arbitration. FEA determined that an arbitrator would likely not find the plan of assistance

to be disciplinary. *See id.* at ¶ 84–88. The Seventh Circuit has held that "employees have no absolute right to have a grievance pursued to arbitration on their behalf: indeed, 'unions have consistently been accorded considerable discretion in deciding whether and to what extent employee grievances should be prosecuted.'" *Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1196 (7th Cir.1990) (quoting *Zipes v. TWA, Inc.*, 846 F.2d 434, 441–42 (7th Cir. 1988), *rev'd on other grounds*, 491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989)). The plaintiff has presented no evidence to show a breach of the duty of fair representation on the handling of the plan of assistance; therefore, summary judgment is appropriate.

After Salvadori was transferred to the high school, the FEA became aware that Salvadori was not happy. *See* UPFF at ¶ 93. The FEA broached the possibility of negotiating a settlement whereby Salvadori would resign at the end of the first semester, but be paid for the whole year. *See id.* at ¶ 94. Salvadori refused. *See id.* at ¶ 95. These facts show no breach of the duty of fair representation.

When Salvadori sought to challenge the district's decision not to renew her contract she secured private legal counsel. Salvadori believes that the failure of WEAC to pay for that private counsel was a breach of duty of fair representation. She is wrong. The facts in the record show that WEAC had a policy of providing its own attorneys for assistance, but not for reimbursing for private attorneys. *See id.* at 107, 109. These facts show no breach of the duty of fair representation.

Salvadori also claims the FEA's failure to arbitrate the school board's decision not to renew her contract was a breach. After the decision not to renew, FEA filed a grievance. *See id.* at 117, 118. The FEA examined the merit of Salvadori's claim

and determined that it lacked merit. As discussed above, the decision to arbitrate or not is entitled to significant deference. Here, the evidence shows that FEA performed significant analysis in determining that Salvadori's grievance lacked merit to arbitrate. *See id.* at ¶¶ 120–30. Again, Salvadori has failed to show a breach of duty.

Salvadori has failed to show a breach of the union's duty of fair representation. Even if she had, however, she would still be unable to clear the final hurdle. The record in this case is bereft of any evidence that would suggest racial animus by the union.

A union can also violate Title VII if it fails to assist employees in the face of known discriminatory treatment. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 669, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). Title VII does "not permit a union to refuse to file any and all grievances presented by a black person on the ground that the employer looks with disfavor on and resents such grievances." *Id.* Salvadori claims that WEAC failed to investigate allegations of race discrimination and did not pursue a discrimination claim in Salvadori's case, even though there was enough evidence to sustain one. The record does not bear this out. WEAC has a policy in place and has represented individual employees in statutory claims. *See* UPFF at ¶ 140. WEAC investigated Salvadori's claims and determined there was not sufficient evidence to proceed. *See id.* at ¶¶ 143, 147–53, 155–60, 162. There is no evidence in the record that WEAC ratified any discriminatory behavior by the employer.

Accordingly,

**IT IS ORDERED** that Franklin School District's, Marie Glasgow's and Dona Schwichtenberg's motion for summary judgment be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that the Franklin Education Association's and the Wisconsin Education Association Council's motion for summary judgment be and the same is hereby **GRANTED;** and

**IT IS FURTHER ORDERED** that plaintiff's complaint be and the same is herewith **DISMISSED** on its merits together with costs as taxed by the clerk of the court.

The clerk is directed to enter judgment accordingly.