**Augusto MALDONADO, Plaintiff,**

v.

**METRA, Defendant.**

No. 89 C 469.

United States District Court,
N.D. Illinois, E.D.

Aug. 1, 1990.

Mitchell Ware, Keith E. Graham, Jones, Ware & Grenard, Chicago, Ill., for plaintiff.

Michael W. Duffee, Frank J. Saibert, Katten Muchin & Zavis, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is the motion of the defendant, Metra, for summary judgment against the plaintiff, Augusto Maldonado. For the following reasons, the court grants the motion in part and denies the motion in part.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). A dispute about a material facts is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence which supports his complaint. *Id.; see First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569, *reh. den.,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party is required to go beyond the pleadings, affidavit, depositions, answers to interrogatories and admissions on file to designate

specific facts showing a genuine issue for trial. *Id.*

Both parties have complied with local rules 12(*l*) and (m). The plaintiff has raised numerous objections to the defendant's statement of undisputed facts. After close examination, the court concludes that the plaintiff has raised genuine issues as to the material facts alleged in paragraphs numbered 9, 10, 11, 12 and 13 of defendant's statement of undisputed facts. The balance of plaintiff's response is either insufficiently supported[1] or does not present issues of material fact. What remains is sufficient to render summary judgment on the majority of plaintiff's complaint. Therefore, with the exception of the paragraphs mentioned above, the court adopts the defendant's statement of undisputed facts as the facts in this case. While these will not be set out verbatim in this order, for the purposes of this motion, a short summary of the facts is sufficient.

Defendant Metra is a subsidiary of the Regional Transportation Administration and an Illinois municipal corporation[2] created for the purpose of providing commuter rail service in the northeastern part of Illinois. Plaintiff Augusto Maldonado began his employment at Metra in 1982, after working for the Regional Transportation Administration since 1977. At Metra, plaintiff occupied the position of Personnel Manager. James E. Cole is the Executive Director of Metra and the plaintiff's immediate supervisor. Michael J. Nielsen is his assistant. Although Metra started out as a small operation, retaining thirty to forty employees, by 1987 it had acquired an additional two thousand to three thousand new employees.

In late 1986 or early 1987, plaintiff had two conversations with Nielsen, where plaintiff told him that he believed Metra was engaging in discriminatory practices. Nielsen urged plaintiff to bring this to the attention of Cole. In late February or early March 1987, plaintiff had a conversation with Cole, where plaintiff told him "We may be discriminating against minorities." Cole essentially ignored the remark.

Sometime around July 1987, Cole decided to reorganize Metra's personnel department to accommodate the changing needs of the agency. The reorganization entailed phasing out the personnel department and establishing in its place the new Department of Human Resources. Metra removed from the Department of Human Resources' jurisdiction some functions previously performed by the personnel department, but added the functions of EEOC compliance and employee training. Responsibility for overseeing these functions vested in the new Human Resources Chief. About this same time, Cole became dissatisfied with plaintiff's performance and discussed the possibility of dismissing him with Nielsen and two of Metra's Assistant Executive Directors.

On August 11, 1987, plaintiff was called into Cole's office. He was informed of the restructuring of the personnel department and was told that there was no longer a place for him at Metra. Plaintiff was told he would be given eight weeks severance pay and was dismissed. On January 19, 1989, plaintiff filed this action. The complaint has since been amended and currently consists of four counts. Count one alleges a cause of action under Title VII for disparate treatment based on national origin.[3] Count two alleges a claim for retaliatory discharge under Title VII. Count three alleges a claim under § 1981 for failure to promote.[4] Count four alleges a claim for retaliatory discharge under § 1981.

■ Plaintiff's claim of a cause of action for retaliatory discharge under § 1981 is clearly not actionable in light of *Patterson v. McLean Credit Union*, — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). There, the Supreme Court held that § 1981 reaches discrimination only in the contract formation stage, as in the refusal to enter

---

**1.** *See, Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101 (7th Cir.1990).

**2.** *See* Ill.Rev.Stat. ch. 111⅔, ¶ 702.20(a)(xii).

**3.** 42 U.S.C. § 2000e *et seq.*

**4.** 42 U.S.C. § 1981.

into a contract because of race[5] or entering into a contract on discriminatory terms, and in the enforcement of contracts, such as impeding access to the courts based on race. *Patterson,* 109 S.Ct. at 2372–73. Section 1981 does not reach to conduct occurring after the formation of the contract. *Id.* at 2373–74; *see also, Sofferin v. American Airlines, Inc.,* 717 F.Supp. 597, 599 (N.D.Ill.1989). Therefore, the court holds that a claim for retaliatory discharge is not actionable under § 1981.[6]

Moreover, and in the alternative to the retaliation claim, the court grants summary judgment as to both of plaintiff's § 1981 claims on the basis that Metra, as a state actor, cannot incur § 1981 liability absent a showing that a municipal custom or policy caused the alleged deprivation, as is required under 42 U.S.C. § 1983.

The leading case on this point is *Jett v. Dallas Independent School District,* — U.S. ——, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). At issue there was whether a state actor could incur liability, under § 1981, for the actions of a subordinate on the basis of respondeat superior. *Jett,* 109 S.Ct. at 2706. After a lengthy analysis of the legislative history of the Civil Rights Act, the Supreme Court flatly rejected this concept, stating:

> We think the history of the 1866 Act and the 1871 Act recounted above indicates that Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violations of the rights declared in § 1981

> ... We hold that the express "action at law" provided by § 1983 for the "deprivation of any rights, privileges, or immunities secured by the constitution and laws," provides the exclusive federal damages remedy for the violation of rights guaranteed by § 1981 when the claim is pressed against a state actor. Thus to prevail on his claim for damages against the school district, petitioner must show that the violation of his "right to make contracts" protected by § 1981 was caused by a custom or policy within the meaning of *Monell* [*v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ] and subsequent cases.

*Jett,* 109 S.Ct. at 2722; *see also, Crowley v. Prince George's County, Md.,* 890 F.2d 683, 685 (4th Cir.1989). Accordingly, in order to avoid summary judgment, the plaintiff must show some facts supporting the existence of a municipal custom or policy which violated rights secured under § 1981.[7]

Applying the law to the facts of this case, the court finds that plaintiff has not demonstrated facts sufficient to support the existence of a municipal policy or custom on the part of Metra which deprives the plaintiff of rights secured by § 1981.[8] Indeed, plaintiff's amended complaint fails to even allege a municipal custom or policy on the part of Metra. On this basis alone, defendant is entitled to summary judgment on plaintiff's § 1981 claims.

Plaintiff's response to the defendant's summary judgment does argue the exist-

---

5. Plaintiff's second § 1981 claim for failure to promote, assuming that promotion would result in a new and distinct contractual relationship, is an example of this. *See, Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1311 (7th Cir.1989).

6. In support of his § 1981 retaliation claim, plaintiff cites *English v. General Development Corporation,* 717 F.Supp. 628 (N.D.Ill.1989), which recognizes a cause of action for retaliatory discharge under § 1981. In light of the clear language found in *Patterson* and its progeny, the court respectfully declines to follow *English.*

7. The court notes that plaintiff's complaint raises his § 1981 claim directly under that statute. As noted by the Supreme Court in *Jett,* the

exclusive vehicle for enforcing rights secured under § 1981 is the remedial provision of § 1983. The court will the plaintiff has brought his § 1981 action through the vehicle of § 1983 and apply the requirements of that statute.

8. The court notes that Metra, if considered to be an arm of the state, is immune from suit under § 1981. *See, Will v. Michigan Department of State Police,* —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). However, it is clear that Metra, as a division of the Regional Transportation Authority, is a municipal corporation and does not enjoy such immunity. *See,* Ill.Rev. Stat. 111⅔, ¶ 701.04; *Will,* 109 S.Ct. at 2311.

ence of such a policy. However, plaintiff cannot simply amend a deficient complaint through a response to a motion challenging the pleading. Moreover, these arguments, even if considered on their merits, are fatally flawed. First, plaintiff argues that Metra, through acquiescence, adopted the actions of Cole as its policy. Plaintiff's Response, p. 6–7. However, Metra's mere "acquiescence" in the acts of Cole, through its failure to take corrective action against alleged discrimination is insufficient, in and of itself, to establish a policy or custom under § 1983. *See, Cygnar v. City of Chicago*, 865 F.2d 827 (7th Cir.1989) (applying § 1983); *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir.1985) (acquiescence in an individual officer's brutality insufficient to constitute a policy); *East v. City of Chicago*, 719 F.Supp. 683, 692 (N.D.Ill. 1989); *Jackson v. Elrod*, 655 F.Supp. 1130 (N.D.Ill.1987). Therefore, Metra's acquiescence in the actions of Cole is not sufficient to constitute a custom or policy for the purpose of this § 1981 analysis.

Plaintiff next argues that Metra had a custom or policy of engaging in "must" hires and "political" hires. Plaintiff's Response, p. 9–10. Plaintiff goes on to state that he was discharged for opposing these policies. *Id.* He reasons, therefore, that plaintiff was dismissed pursuant to a municipal policy or custom. This argument wholly misses the point. As alleged by plaintiff, he was dismissed for opposition to the stated "policies" and not *pursuant* to these policies. This argument likewise fails to show the existence of a municipal policy or custom on the part of Metra which deprives the plaintiff of rights secured by § 1981.

Plaintiff's last argument merits a slightly longer discussion. Plaintiff argues that Cole, the Executive Director of Metra, has final authority to set policies for Metra, and that the single incident of his decision to terminate the plaintiff is sufficient to establish a policy or custom. Generally, a single incident is insufficient to establish a municipal custom or policy. *Strauss*, 760 F.2d at 767. However, a single incident can show the existence of a policy or custom if the course of action taken was delib-

erately chosen from various alternatives by officers responsible for establishing final policy with respect to the subject matter in question. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83, 106 S.Ct. 1292, 1298–1300, 89 L.Ed.2d 452 (1986). Whether a particular official has "final policymaking authority" is a question of state law. *St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988).

Looking to state law in this case, it is clear that Cole is not an official vested with final policymaking authority. By statute, the Commuter Rail Board is responsible for setting policies for Metra. *See*, Ill.Rev. Stat. ch. 111⅔, ¶ 703B.03. Cole, as executive director, is bound by those policies. *See*, Ill.Rev.Stat. ch. 111⅔, ¶ 703B.05. The statute specifically states that Cole must act "consistent with the *policies* and directions" of the Commuter Rail Board. *Id.* There is no evidence that either the legislature, the Regional Transportation Authority or the Commuter Rail Board has delegated any final policymaking authority to Cole. Under state law, Cole does not have final policymaking authority sufficient to satisfy the requirement of a municipal custom or policy. Accordingly, the court grants summary judgment on behalf of defendant as to plaintiff's claims arising under § 1981.

The court next turns to plaintiff's claims under Title VII. Plaintiff raises two claims; 1) that he was terminated in retaliation for his opposition to Metra's allegedly discriminatory policies and 2) he was terminated due to his national origin. The court will deal with each claim separately.

■ Examination of a Title VII claim, generally, is made pursuant to the burden shifting analysis stated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that analysis, the plaintiff has the initial burden to establish a *prima facie* case of discrimination. If the plaintiff is successful, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged action. If the defendant is successful, the burden shifts

back to the plaintiff to show that the articulated reason is pretextual. *McDonnell Douglas*, 411 U.S. at 802–05, 93 S.Ct. at 1824–26; *see also, Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981).

■ In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: 1) that he engaged in statutorily protected expression; 2) he suffered an adverse action by his employer and; 3) there is a causal link between the protected expression and the adverse action. *Holland v. Jefferson National Life Insurance Co.*, 883 F.2d 1307, 1313 (7th Cir.1989). In order to have a protected expression under Title VII, a plaintiff need only have a reasonable belief that the practice challenged is in violation of Title VII. *Holland*, 883 F.2d at 1314. Moreover, Title VII protects not only formal charges of discrimination, such as charges filled with the Equal Employment Opportunity Commission, but informal complaints to supervisors as well. *Sumner v. United States Postal Service*, 899 F.2d 203, 209 (2d Cir. 1990). Plaintiff claims he was retaliated against for complaining to Cole and Nielsen concerning possible hiring discrimination against minorities. Plaintiff's Response, p. 11–12. Plaintiff had a reasonable belief that a violation was occurring. As such, his expression is certainly protected under Title VII. As well, there is no question that plaintiff's termination is an adverse action by Metra. The remaining question is whether there was a causal link between the protected expression and the adverse action.

■ The element of a causal link requires plaintiff to provide evidence "sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir.1990) (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982)). A

causal connection can be shown through direct evidence of discriminatory animus, similar treatment of employees who engaged in similar conduct or indirectly by showing, through circumstantial evidence, that the protected expression was followed by discriminatory action. *Sumner*, 899 F.2d at 209. Plaintiff does not argue that there is evidence of a direct racial animus nor that employees who engaged in similar expression were dismissed. Rather, plaintiff attempts to show a causal link through indirect evidence.

■ When employing the indirect method to show a causal link, the sequence of events is especially telling, and evidence that the adverse action was temporally close to the protected expression may be sufficient to establish the causal connection. *Holland*, 883 F.2d at 1315. In this case, plaintiff made his comments concerning possible discriminatory actions by Metra in late 1986 and February or March of 1987. Defendant's Statement, ¶ 14, 15. Plaintiff was terminated on August 11, 1987. Therefore, there was a five month lapse between the protected expression and the adverse action by the employer. Standing alone, this five month lapse is not temporally close enough to raise an inference of causal link. *See, Khouri v. Frank Cuneo Hospital*, No. 88 C 4553, 1990 WL 19888 (February 22, 1990 N.D.Ill.) (holding an eight month lapse between the protected expression and plaintiff's discharge insufficient to infer causal link).

Plaintiff attempts to buttress his causal link argument by referring the court to a letter to Cole prepared by Nielsen. Plaintiff points to statements of Nielsen concerning the possibility that plaintiff would go to UMTA[9] officials and become a source of hostile information as indicative of the retaliatory reasons for his discharge. Plaintiff's Memo, p. 12. However, as defendant points out, this letter was written *after* the decision to terminate the plaintiff was made. Defendant's Reply, p. 10. Moreover, the substance of the letter deals

9. The Urban Mass Transportation Administration is an agency of the United States Secretary of Transportation which oversees distribution of federal funds to finance urban transportation

programs and reviews compliance by grant recipients with the rules and regulations of the UMTA.

with the possible repercussions attendant to plaintiff's discharge, and does not evidence any racial animus in connection with that discharge. Therefore, any such statement cannot create a causal link between plaintiff's protected expression and his dismissal. Since plaintiff has failed to establish a causal link between his protected expression and his dismissal, he has failed to make out a *prima facie* case of retaliatory discharge under Title VII.

■ Plaintiff's last claim, his claim for disparate treatment under Title VII, does survive.[10] In order to state a *prima facie* case of disparate treatment in termination, a plaintiff must show: 1) that he was a member of a protected class; 2) that he was doing the work well enough to meet the employer's legitimate expectations;[11] 3) that, in spite of his performance, he was discharged; and 4) his employer sought a replacement for him. *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1153–54 (7th Cir.1989); *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 570–71 (7th Cir.1989).

■ In this action, it is undisputed that, being hispanic, plaintiff is a member of a protected class. However, there is a genuine issue of material fact as to whether plaintiff was doing the work well enough to meet Metra's legitimate expectations at the time he was dismissed. Defendant's 12(1) statement chronicles Metra management's eventual dissatisfaction with plaintiff's job performance as personnel manager. Defendant's Statement of Undisputed Material Facts, par. 9, 10, 11, 12 and 13. Plaintiff's statement disputes this, putting forth facts showing that he had performed his job well enough to meet Metra's legit-

imate expectations. Plaintiff's Response to Defendant's Statement, par. 9, 10, 11, 12 and 13; Statement of Additional Facts, par. 11. Plaintiff's factual showing is sufficient to raise a genuine issue of material fact as to the second element of the *McDonnell Douglas* test and summary judgment on this claim is therefore inappropriate.

In sum, the court grants defendant's motion for summary judgment as to all counts brought pursuant to § 1981 and plaintiff's claim for retaliatory discharge under Title VII. The court denies summary judgment as to plaintiff's claim for disparate treatment under Title VII.

IT IS SO ORDERED.

---

**10.** There are two types of discrimination cognizable under Title VII; disparate impact and disparate treatment. A disparate treatment claim exists where the plaintiff alleges that his employer treats him less favorably due to his race, color, religion, sex or national origin. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Proof of discriminatory motive is essential to this analysis. *Id.* A discriminatory impact case involves employment practices which, although facially neutral, fall more harshly on one group than another and cannot be justified by business necessity. *Id.* Proof of discriminatory motive is

not required under this theory. *Id.* As plaintiff only alleges discrimination as to himself, his case is one for disparate treatment.

**11.** This element is the equivalent of the "qualified for the job" factor enunciated in *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. However, the *McDonnell Douglas* element is best applied in cases of discriminatory *hiring*. The element mentioned here is more appropriate to a case involving the alleged discriminatory firing of a long time employee. *See, La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405 (7th Cir.1984).