41 F.3d 1510
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Daryl LAIRD, Plaintiff-Appellant,
v.
CRAGIN FEDERAL BANK, Defendant-Appellee.
 Nos. 94-1321, 94-1556.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 16, 1994.
Decided Nov. 3, 1994.
 
 Before CUMMINGS, CUDAHY and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Daryl Laird appeals the district court's grant of summary judgment to Cragin Federal Bank. For the reasons stated by the district court in the attached order, we AFFIRM.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 2
 Daryl Laird, Plaintiff,
 
 
 3
 v.
 
 
 4
 Cragin Federal Bank, Defendant.
 
 92 C 8441
 Docketed Jan. 18, 1994
 MEMORANDUM OPINION AND ORDER
 
 5
 MAROVICH, District Judge.
 
 
 6
 Plaintiff Daryl Laird has brought a three-count Complaint against Defendant Cragin Federal Bank ("Cragin") for sexual harassment in Count I, retaliatory discharge in Count II and intentional infliction of emotional distress in Count III. Defendant Cragin has moved for summary judgment on all three counts. For the reasons set forth below, the Court grants Defendant Cragin's motion for summary judgment.
 
 BACKGROUND
 
 7
 Based on our careful consideration of the Local Rule 12(m) and 12(n) Statements filed by the parties, we find the facts of this case are as follows.[1] Cragin hired Daryl Laird in August 1987, as the Human Resources Information Systems ("HRIS") Coordinator. Prior to obtaining this position, Laird had worked as a bank teller for about eleven years and also had about five years experience in non-exempt benefits positions. In July 1988, Steve Skriba, Vice President and Director of Human Resources, promoted Laird to the position of HRIS Manager. On September 15, 1989, Laird became the Employee Benefits and HRIS Manager. Laird's employee benefits responsibilities included paying premiums and communicating plan provisions to employees. Another Cragin employee, Maureen McCarley, Compensation Manager, had previously had these duties.
 
 
 8
 On April 12, 1991, Laird's title was changed to Benefit System and HRIS Manager. Laird experienced no grade reduction nor any change in salary as a result of this title change. Skriba testified that the title change was a result of Cragin's becoming a publicly-traded company and the needs of the human resources department. Although Laird admits no official grade reduction or salary change occurred, she claims, without offering any support, that the title change was "essentially a demotion to her previous position." Laird also admits that Skriba informed her that management wanted to eliminate as many consultants as possible in all areas, including benefits.
 
 
 9
 Cragin maintains that Laird was to have more responsibility for certain areas such as programming and in-house data base management. Laird denies that she had any additional responsibilities in any area after the title change and claims that job responsibilities were repeatedly taken away from her. Laird admits that after the job title change, certain of her responsibilities were given to other employees including Maureen McCarley, Compensation Manager, Skriba, and Peggy Gallivan. Several employees had their duties added to or reduced during the period from 1990 through 1992 including Theresa Zumer, Maureen McCarley, Peggy Gallivan, and Kris Velasquez. Laird agrees that Skriba had the discretion as a manager to take these actions.
 
 
 10
 Laird complained to Frederic Novy, Cragin's President, in July 1990, and claimed that Skriba's treatment of her was creating a "threatening and essentially hostile environment." Laird noted that Skriba had threatened to demote her or terminate her and she presented Novy with a record of these instances which she had prepared. Laird did not specifically mention discrimination in her complaint to Novy. Laird also complained to Novy about Skriba in November 1990, and June 1991. The record does not disclose the substance of those complaints.
 
 
 11
 Several weeks after Laird's first complaint to Novy, she and Skriba met and discussed her concerns. At the time, Laird believed this was the end of the problem and retrieved her diary from Novy. We assume the diary was the record presented to Novy in July that allegedly detailed Skriba's conduct toward Laird. The Court, however, does not have that document before it.
 
 
 12
 Laird admits that she considered Skriba a difficult boss and observed him being difficult with other employees including Theresa Zumer, Maureen McCarley, and Kristin Velasquez. She never observed Skriba's interaction with Gary Tackett, her former supervisor, one of the few male employees in Human Resources at Cragin.
 
 
 13
 Apparently, the "problems" between Skriba and Laird did not end after their meeting in 1990 because in June 1991, Laird filed a charge of sex discrimination against Cragin charging that Skriba took certain responsibilities away from her because of her sex and that he had restructured her job "without any apparent reason." In October, 1991, Laird amended her EEOC charge to allege retaliation and claimed that Cragin gave conflicting reasons for restructuring her job. Laird claims the conflict arose because in March she was informed that her job was restructured because of her mismanagement of her department and in April she was told the restructuring was because of Cragin going public.
 
 
 14
 Among other things, Laird claims that in March 1990, Skriba commented that he "would restructure the division and get rid of the prima donnas." Laird understood this as a reference to "anybody who didn't agree with him or complained or of that nature." Laird acknowledges that Skriba had threatened her with demotion and termination prior to her complaints to Novy. Laird also maintains that she did not contribute to any problems with Skriba. On the other hand, Laird believes that Theresa Zumer and Maureen McCorley did contribute to the alleged "hostile environment directed at her." Laird is aware that Zumer had complained about her though she was unaware of the specific nature of her complaints. Laird believes that Zumer did not like any manager with whom she worked.
 
 
 15
 Laird received several written warnings from Skriba, including two final warnings. On February 4, 1992, Laird received a warning about her performance regarding a project for Cragin's actuary, the Wyatt Company. The memorandum indicated that she had failed to provide necessary data to the actuaries and failed to see that the project was completed after being contacted at home. On February 29, 1992, Laird received a second and "final" warning. Cragin claims the warning was about Laird's criticism of other employees. Laird disputes this but admits it was styled as a final warning and that she did not respond to it. The parties dispute the substance of the warning but neither has seen fit to provide the Court with copies of any of the warnings. Laird also notes that on February 28, 1992, she again complained to Novy about Skriba.
 
 
 16
 Over an unspecified time period, Skriba received complaints about Laird from other human resources employees, including Maureen McCarley, Theresa Zumer, and Linad Kilian. Laird admits that Skriba received complaints, but notes that Skriba could not state the specifics of these complaints. Skriba also received complaints from outside consultants, including Peat, Marwick and the Wyatt Company. Laird contends that Skriba "admitted" that these consultant complaints were not about her personally but has not provided the portion of Skriba's deposition transcript that she claims supports her contention. As a result, we will admit Cragin's statement that outside consultants complained about Laird.
 
 
 17
 On March 27, 1992, Skriba gave Laird a third warning, also styled a final warning. Skriba had received a complaint from Cragin's Vice President of Operations regarding Laird's failure to comply with Management Information Systems guidelines. Skriba gave Laird explicit instructions for dealing with other personnel in this memorandum. Laird did not prepare a written response to this warning. Laird admits receipt of all three warnings but claims to have had legitimate business reasons for her conduct in each instance.
 
 
 18
 In August 1992, Skriba suspended Laird following the filing of a formal grievance against Laird by Linda Kilian. Kilian claimed to be unable to continue to work under the stress imposed on her by Laird. Laird notes that Kilian admitted to declining performance and denies that she placed undue stress on Kilian. Laird agreed that her job restructuring had affected Kilian.
 
 
 19
 After an investigation that still fails to meet with Laird's approval, Cragin's Executive Committee, consisting of Adam Jahns, Chairman of the Board, Frederic Novy, President, and John Belter, Executive Vice President, decided to terminate Laird's employment. On August 26, 1992, Skriba and Susan Schliep, Manager of Human Resource Planning and Staffing, advised Laird of her termination.
 
 
 20
 Laird contends that Skriba committed an unspecified continuous series of demotions, underminings, threats of termination and finally, actual termination. Laird further claims that these acts followed closely in time her complaints about Skriba or followed soon after he learned of her complaints or her filing with the EEOC. Laird admits that four months elapsed between her filing of an EEOC charge and her discharge but claims that in the interim she experienced "a series of progressively retaliatory adverse actions." In support of this assertion regarding progressive retaliation against her, Laird offers her own affidavit that adverse action closely followed her complaints.
 
 
 21
 In regard to her claim for intentional infliction of emotional distress, Laird has testified to suffering from depression, inability to concentrate, sleeplessness, high blood pressure, and chest pains. Laird also claims to have been diagnosed as suffering from post-traumatic stress syndrome and that she has been prescribed anti-depressant medication.
 
 
 22
 Despite references to sexual discrimination throughout the Complaint and Laird's EEOC charge, Laird asserts that she has not presented nor does she seek to present a claim for sexual discrimination. Specifically, Plaintiff now admits that "she has not established a claim for sex discrimination per se," but claims that "her complaint sounds in sexual harassment, not sex discrimination." The Court accepts this admission as a waiver of any theory of recovery based solely on sexual discrimination. The Court will thus analyze Count I under the law regarding sexual harassment.
 
 DISCUSSION
 
 23
 In order for a party to prevail on a summary judgment motion, "the pleading, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). A defendant moving for summary judgment must show, based on the record, an absence of evidence to support the plaintiff's case. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "A party opposing summary judgment cannot rest on the pleadings and must affirmatively set forth facts that show that there is a genuine issue of fact." McCarthy v. Kemper Life Ins. Cos., 924 F.2d 683, 687 (7th Cir.1991). Although the evidence and all reasonable inferences from the record are drawn in the non-movant's favor, Griffin v. Thomas, 929 F.2d 1210, 1212 (7th Cir.1991), the non-movant must cast more than "some metaphysical doubt" as to the material facts. LaScola v. US Sprint Communications, 946 F.2d 559, 563 (7th Cir.1991) (citations omitted). As a practical matter, the test is "whether the non-movant has a fighting chance at trial." Shager v. Upjohn Co., 913 F.2d 398, 403 (7th Cir.1990). With these principles in mind, we now address the pending motion.
 
 SEXUAL HARASSMENT
 
 24
 Laird's claim in Count I is that she was subjected to a hostile work environment in violation of Title VII. To create a hostile work environment, the conduct in question "must have the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). Not all harassment, however, falls within the class of conduct prohibited by Title VII. In Meritor, the Supreme Court noted:
 
 
 25
 Of course, ... not all workplace conduct that may be described as "harassment" affects a "term, condition or privilege" of employment within the meaning of Title VII. For sexual harassment to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment."
 
 
 26
 Id. at 67 (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir.1982)) (citations omitted); see also Saxton v. American Telephone & Telegraph Co., No. 92-1545, 1993 U.S.App. LEXIS 31599 (7th Cir. Dec. 3, 1993). To state the obvious, Title VII does not come into play here unless discrimination based on sex or gender has created the alleged hostile or abusive work environment. Meritor, 477 U.S. at 66; see also Limes-Miller v. Chicago, 773 F.Supp. 1130, 1146 (N.D.Ill.1991) (noting that "not getting along with your superiors does not equate to discrimination [or sexual harassment]"). As Justice Ginsburg explained recently, "[t]he critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Harris v. Forklift Systems, Inc., 114 S.Ct. 367, 372 (1993) (Ginsburg, J., concurring).
 
 
 27
 Although Cragin has argued persuasively that the record fails to show that the working environment experienced by Laird was hostile or abusive or that Laird experienced any harassment, we need not reach these questions. Laird has not presented any specific facts or admissible evidence that raise a triable question of fact that anyone's conduct toward her was based on her gender. Though this list is far from exclusive, we note that Laird has offered no evidence of sexual advances, sexual or gender-based comments, or any demeaning references to women. Though Laird claims duties were taken away from her, the only evidence indicates that the duties were given to other women. Laird, herself, had at one time gained duties formerly performed by another woman.
 
 
 28
 In her Complaint, Laird does claim to have been excluded from "all-male" meetings. On a motion for summary judgment, however, Laird can no longer rely on her allegations. She has failed to present any evidence of the dates, times, subject matter, or persons involved in these meetings. Although the Court is required to extend Laird the benefit of all reasonable inferences, we will not manufacture inferences that lack a basis in fact. Laird has simply failed to respond to Cragin's motion with any facts that could create a genuine dispute that any of the alleged actions taken by Cragin, Skriba or her co-workers were because of her gender.
 
 
 29
 Title VII simply does not protect employees from generally abusive or hostile employers or supervisors. To elaborate, the difficult, aggravating, unreasonable, uninformed, insulting and demanding boss does not offend Title VII, but the one who creates a hostile or abusive environment because of a victim's gender, race, color, religion, or national origin does. Taking the facts in a light most favorable to Laird, this case falls into the former category and not the latter. As a result, we grant Defendant Cragin's motion for summary judgment on Count I.
 
 RETALIATION
 
 30
 Title VII provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [she] has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. Sec. 2000e3(a) (1988). In Count II, Laird claims that Cragin retaliated against her due to her complaints about her supervisor, Skriba, and her filing of an EEOC charge in June 1991, and an amended charge in October 1991. Cragin challenges Laird's ability to establish any element of a prima facie case of prohibited retaliation.
 
 
 31
 To state a prima facie case of retaliation, Laird must show that "(1) she engaged in protected opposition to Title VII discrimination or participated in Title VII proceedings; (2) she suffered adverse actions by [Cragin] subsequent to or contemporaneous with such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action." Samuelson v. Durkee/French/Airwick, 976 F.2d 1111, 1114 (7th Cir.1992). Ultimately, Laird must show that Cragin would not have taken the claimed adverse actions against her "but for" her participation in protected activity. To resolve the motion, we will take each element in turn.
 
 
 32
 Cragin contends that Laird's complaints to Novy about Skriba beginning in July 1990 are not "protected activity" because she did not challenge his conduct as discriminatory, i.e. as based on her gender. Specifically, Cragin points out that Laird complained to Novy that Skriba's conduct was creating a "threatening and essentially hostile environment" but did not comment that Skriba's conduct toward her was because of her sex or gender. Laird responds that her informal complaint to Novy is sufficient protected activity even though she did not specifically mention discrimination.
 
 
 33
 Informal complaints to supervisors can constitute protected activity. Maldonado v. Metra, 743 F.Supp. 563, 568 (N.D.Ill.1990). Laird must only have had a reasonable belief that she was challenging conduct in violation of Title VII. Holland v. Jefferson National Life Ins. Co., 883 F.2d 1307, 1314 (7th Cir.1989). The challenged practice or conduct need not actually violate Title VII. Id. The question here is whether Laird's belief was reasonable.
 
 
 34
 Laird has testified and no doubt feels that Cragin and Skriba would have treated a man differently. The problem, as we indicated in our discussion above, is that Laird has offered no facts to support that belief. We are thus left with the conclusion that Laird's complaints to Novy, and indeed, her EEOC charge were so lacking in factual support as to be utterly without merit. As a result, Laird could not have had a reasonable belief that she was challenging conduct in violation of Title VII and cannot establish a prima facie claim of retaliation.
 
 
 35
 Even were we to assume that Laird had a reasonable belief when she complained to Novy and filed her EEOC charge, Cragin asserts that fatal defects exist in Laird's ability to prove each of the other elements of a prima facie case. Cragin first argues that the facts indicate Laird suffered no adverse employment action other than her termination. Laird argues that from the time of her first complaint to Novy in July 1990 through the date of her termination that Skriba removed responsibilities from her, undermined her authority, and essentially or informally demoted her. We must decide whether Laird has met her burden to respond with specific facts that show a genuine issue of fact exists that these various actions were adverse and followed her complaints closely in time.
 
 
 36
 In this regard, Laird has once again relied on her own affidavit and the allegations of the Complaint without pointing to specific facts or events that would support her argument. The Court will not accept her characterizations of unspecified events occurring over the course of several months. Nowhere does Laird specify the alleged retaliatory conduct in detail with supporting materials. Laird concludes that she was "essentially demoted" while providing no facts to demonstrate how this occurred. Laird points to no deposition testimony from Skriba or anyone at Cragin that even notes the possibility that any of the events that are alleged in the Complaint occurred. We are not even presented with a dispute over what occurred or was said at meetings acknowledged to have taken place. In conclusory terms, Laird states in her affidavit that "the adverse actions taken against me followed closely on the heels of my complaints about Skriba, or at least closely followed his learning of the complaints." Parroting the language of the elements of a prima facie case of retaliation is insufficient to overcome a motion for summary judgment that requires the non-movant to respond with specific facts. With the exception of her termination, Laird has failed to demonstrate any genuine issue regarding other claimed adverse actions, such as her "demotion."[2]
 
 
 37
 The third element of a prima facie case of retaliation requires Laird to show a causal connection between the protected activity and adverse actions. Even assuming Laird engaged in protected activity by complaining to Novy in July 1990, November 1990, or June 1991 and by filing her EEOC charge, the only adverse action the Court can identify is her termination in August 1992. The lapse of time between any of Laird's complaints or the filing of her charge and her termination is simply too great to raise an inference of retaliation. Compare Hughes v. Derwinski, 967 F.2d 1168, 1174 (7th Cir.1992) (four month gap too large to create inference of retaliation); Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317 (7th Cir.1992) (four months too long); Maldonado v. Metra, 743 F.Supp. 563, 568 (N.D.Ill.1990) (five months too long) with Holland, 883 F.2d at 1314-15 (one week between complaint and adverse action sufficient to create factual issue as to causation). Laird attempts to meet her burden by relying on a nebulous series of informal acts to undermine her, demotions, complaints, and harassments leading to her eventual termination. We again emphasize that general and vague opinions, suppositions, conclusions and unsupported statements of fact will not suffice to meet a non-movant's burden to respond to a properly supported motion for summary judgment. We find that no genuine factual dispute exists as to whether any causal link exists between any protected activity and any adverse action taken by Cragin.
 
 
 38
 In sum, we find no genuine dispute of fact exists as to whether Laird can establish a prima facie claim of retaliation. On this record, she cannot. As a result, we need not consider the issue of pretext. The Court, therefore, grants Cragin's motion for summary judgment as to Count II.
 
 INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
 
 39
 At this point, the Court could exercise its discretion and decline to consider Cragin's motion with respect to this state law claim brought here under the Court's supplemental jurisdiction. On the other hand, we can consider the motion as to this count, especially where no difficult questions of state law are involved and considerations of judicial economy warrant retention. Because this claim is so intertwined with the claims made in Counts I and II and is in large part resolved by our discussion above, we will proceed to decide Cragin's motion on Count III as well.
 
 
 40
 To succeed on this claim, Laird must show that (1) Cragin engaged in conduct "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency;" (2) she suffered distress so "severe that no reasonable [person] could be expected to endure it;" (3) Cragin acted with knowledge that "severe emotional distress [was] certain or substantially certain to result" from its actions; (4) the extreme and outrageous character of Cragin's conduct must have arisen "from an abuse of a position or a relation with another which gives the actor actual or apparent authority over the other or power to affect his interests." Timm v. Mead Corp., 1993 U.S.Dist. LEXIS 13771, at * 34 (N.D.Ill. Sept. 29, 1993) (quoting Public Finance Corp. v. Davis, 360 N.E.2d 765, 767 (Ill.1977)). On this record, Laird has not offered sufficient evidence to warrant a trial.
 
 
 41
 As this Court emphasized in Timm, Illinois law is strict in requiring that the conduct complained of be extreme and outrageous when the tort arises in the employment context. Id. Cragin correctly notes that "[m]ere insults, indignities, threats, annoyances, petty oppressions or trivialities do not constitute extreme or outrageous behavior." Id. (quoting Public Finance, 360 N.E.2d at 767). Laird argues that Skriba held a position of authority and abused that power by continually threatening to demote and fire Laird and by retaliating against her after she complained. As to retaliation, our discussion above indicates that there is no evidence of any retaliation.
 
 
 42
 As for Laird's claim that Skriba's conduct was extreme and outrageous, we also find the evidence presented inadequate to create a genuine dispute. Laird again lumps a series of unknown events together and characterizes them as she sees fit. What the record reveals at best is that Laird and Skriba clashed frequently, Skriba questioned her performance and ability, Skriba threatened to demote or terminate her, Laird complained to Novy, and eventually Cragin terminated Laird. The cases we reviewed in Timm show that the evidence here falls far short of that necessary to warrant a trial. See, e.g., Pudil v. Smart Buy, Inc., 607 F.Supp. 440, 444 (N.D.Ill.1985) (employer's conduct not outrageous where employer terminated employee who had relied on representations of job security); Stocklein v. Illinois Tool Works, Inc., 589 F.Supp. 139, 146 (N.D.Ill.1984) (conduct not outrageous where employer terminated employee due to age and reneged on promise to pay severance pay and job counselling); Owens v. Second Baptist Church, 516 N.E.2d 712, 716-17 (Ill.App.Ct.1987) (conduct not outrageous where employer "systematically and disrespectfully" ousted its employee of forty years--the pastor, by disrupting meetings, blocking pastor's access to pulpit, physically pulling pastor away from communion table, and changing locks on church doors). We cannot say that any facts here demonstrate a triable issue on the question of whether Skriba's conduct[3] was so extreme and outrageous that no reasonable person could be expected to endure it. The Court, thus, enters summary judgment for Cragin on Count III.
 
 CONCLUSION
 
 43
 For the reasons set forth above, the Court grants Defendant Cragin's motion for summary judgment on all counts.
 
 ENTER:
 
 44
 /s/ George M. Marovich
 
 GEORGE M. MAROVICH
 UNITED STATES DISTRICT JUDGE
 DATED: January 14, 1994
 
 
 [1]
 Except to the extent noted in the Court's statement of the facts of this case, the Court strikes the following paragraphs of Plaintiff Laird's Statement of Additional Facts as unsupported or irrelevant: paragraphs 2, 3, 8, 10, 13, 15. In addition to these stricken contentions, the Court will ignore any statements of fact, or portions thereof, that are inadmissible or are not properly supported as required by Local Rule 12
 
 
 [2]
 We also note that Laird admits certain of her duties were given to other employees after her job title was changed in April 1991. Laird also admitted that other employees had their duties changed during this time period. Cragin asserts that this resulted from a restructuring of the Human Resources department. Even were we to assume that the loss of duties in the absence of a salary or grade reduction is adverse, Laird has presented no factual support that this action closely followed any specific complaint. We find no genuine issue of fact exists that these actions were retaliatory in nature
 
 
 [3]
 We note that Laird apparently seeks to impose liability on Cragin for Skriba's actions under a respondeat superior theory. For example, Laird states that "Defendant Cragin, through supervisor Skriba, abused its position of authority over Laird." As noted in Bailey v. Unocal Corp., 700 F.Supp. 396, 400 (N.D.Ill.1988), such claims are preempted by the Illinois Workers' Compensation Act. 820 ILCS 305/1 et seq. We need not address this potential problem or its limited exceptions, however, because we have found no basis in this record to support a claim that either Cragin or Skriba's conduct was extreme and outrageous